RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244

Attorneys for Chapter 11 Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SHOE PAVILION INC., a Delaware corporation, | ) Case No. 1:08-bk-14939-MT<br>) (Jointly Administered) |
| | ) |
| SHOE PAVILION CORPORATION, a Washington corporation, | ) Case No. 1:08-bk-14941-MT<br>) |
| Debtors. | ) **NOTICE OF MOTION AND MOTION OF**<br>) **DEBTORS TO APPROVE DISMISSAL OF**<br>) **DEBTORS' CHAPTER 11 BANKRUPTCY**<br>) **CASES AND DISTRIBUTION OF FUNDS**<br>) **TO ALL OUTSTANDING**<br>) **ADMINISTRATIVE CLAIMANTS EITHER**<br>) **IN FULL OR ON A <u>PRO RATA</u> BASIS;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES; DECLARATION OF**<br>) **LAURA CONTRERAS IN SUPPORT**<br>) **THEREOF**<br>) |
| | ) <u>Hearing</u>:<br>) Date: November 9, 2009<br>) Time: 10:00 a.m.<br>) Place: Courtroom "302"<br>)          21041 Burbank Blvd.<br>)          Woodland Hills, CA<br>)<br>)<br>)<br>) |

**PLEASE TAKE NOTICE THAT** a hearing will be held on November 9, 2009 at 10:00 a.m. before the Honorable Maureen Tighe, United States Bankruptcy Judge, in her Courtroom 302, located at 21041 Burbank Blvd., Woodland Hills, CA, to consider the motion (the "Motion") filed by Shoe Pavilion Inc. and Shoe Pavilion Corporation, the debtors and debtors in possession in the above-referenced, jointly administered, Chapter 11 bankruptcy cases (collectively, the "Debtors"), for an order approving the dismissal of the Debtors' Chapter 11 bankruptcy cases and authorizing the distribution of all of the estates' remaining funds to all holders of outstanding allowed administrative claims either in full or on a pro rata basis, as the case may be. As set forth more fully in the annexed Memorandum of Points and Authorities, it appears that the estates currently have just enough cash to be able to satisfy all allowed administrative claims in full.

The Debtors believe that "cause" exists for the Court to approve a dismissal of the Debtors' Chapter 11 bankruptcy cases and to authorize the Debtors to distribute the remaining funds in these estates to all holders of outstanding allowed administrative claims either in full or on a pro rata basis (as the case may be), and that this result is in the overwhelming best interests of these estates. The Debtors have now liquidated all of their assets that can be monetized, and all pending adversary proceedings, claim objections and other disputes have all been resolved. In short, these cases have now been fully administered. However, confirmation of a plan of reorganization (even a liquidating plan) is not possible given that the cases are either administratively insolvent or there is *de minimus* funds available for unsecured creditors, and the cases should not be converted to Chapter 7 given that there would be nothing for a trustee to do and having a trustee would only add to the administrative costs (thereby increasing the administrative insolvency) of these cases. The Debtors have therefore

1

concluded that dismissing their Chapter 11 bankruptcy cases and distributing all of the remaining funds in these estates to the holders of outstanding allowed administrative claims either in full or on a pro rata basis (as the case may be) is the most efficient and cost effective manner of ending these bankruptcy cases, which have been pending for almost 1.5 years, and getting money to creditors as quickly as possible.

Attached as Exhibit "1" to the Declaration of Laura Contreras (the "Contreras Declaration") is a chart (the "Chart"), which sets forth the name of each holder of an outstanding allowed administrative claim and the amount of their unpaid and outstanding allowed administrative claim.  There are four claims in the Chart (those marked with an asterisk) which remain subject to Court approval because such claims represent pending applications for the allowance of fees and expenses by professionals employed in these cases. The affected professionals are: (1) Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtors, (2) Cooley Godward LLP, bankruptcy counsel to the Official Committee of Unsecured Creditors, (3) Wickersham & Murphy, a Professional Corporation, special corporate and securities counsel to the Debtors, and (4) Grant Thorton, accountants to the Debtors (collectively, the "Remaining Fee Applications"). The hearings to consider these Remaining Fee Applications are set concurrently with the hearing on this Motion.

The Debtors estimate that by the time of the hearing on this Motion, they will have a total of approximately \$3,796,950 of cash available for payments to holders of allowed administrative claims on their unpaid claims, after accounting for estimated remaining post-petition expenses of the estates and quarterly fees that will be owed to the United States Trustee for the 3rd and 4th quarters of 2009. The Debtors also believe that there will be a total of approximately \$3,780,685 of allowed and unpaid administrative claims, assuming that the

Court approves the Remaining Fee Applications in their entirety. As described more fully in the annexed Memorandum of Points and Authorities, all allowed secured claims have already been paid in full. If the Court approves the Remaining Fee Applications in their entirety, the Debtors estimate that each holder of an outstanding allowed administrative claim will receive a distribution equal to 100% of the amount of their allowed and unpaid administrative claim. There will be a balance left of approximately $16,000, which, needless to say is *de minimus* to justify the Debtors having to review and object to the thousands of unsecured claims in these cases. Indeed, the process of having to review and object to unsecured claims would result in the estates incurring fees substantially in excess of the remaining balance of $16,000.

The complete bases for the Motion are set forth in the annexed Memorandum of Points and Authorities and the Contreras Declaration including all exhibits thereto. The Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and the Contreras Declaration including all exhibits thereto, the statements, arguments and representations of the parties to be made at the hearing on the Motion, if any, and any other evidence properly presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that any opposition to the Motion must be in writing and filed with the Clerk of the Bankruptcy Court and served upon counsel for the Debtors at the address set forth in the upper left-hand corner of the first page of this Motion not later than 14 days after the service of this Motion. The failure to timely file an objection and a request for a hearing may be deemed by the Court to constitute consent to the relief requested in the Motion.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order:

3

1.    approving the immediate dismissal of the Debtors' Chapter 11 bankruptcy

cases;

2.    authorizing the Debtors to distribute all of the remaining funds in these estates

to all holders of outstanding allowed administrative claims either in full or on a pro rata basis,

as the case may be, in accordance with the Chart, subject to any modifications which need to

be made to the Chart resulting from orders of the Court issued in connection with the

Remaining Fee Applications; and

3.    granting such other and further relief as the Court deems just and proper under

the circumstances of these cases.

Dated: October 19, 2009                    SHOE PAVILION INC.
                                           SHOE PAVILION CORPORATION


                                           By: _____

                                                Ron Bender
                                                Monica Y. Kim
                                                Juliet Y. Oh
                                                LEVENE, NEALE, BENDER,
                                                RANKIN & BRILL L.L.P.
                                                Attorneys for Chapter 11
                                                Debtors and Debtors in
                                                Possession

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

By the Motion, the Debtors request an immediate dismissal of the Debtors' Chapter 11 bankruptcy cases and authorization to distribute all of the estates' remaining funds to all holders of outstanding allowed administrative claims either in full or on a pro rata basis, as the case may be. Attached as Exhibit "1" to the annexed Contreras Declaration is a chart (the "Chart"), which sets forth the name of each holder of an outstanding allowed administrative claim and the amount of their unpaid and outstanding allowed administrative claim. There are four claims in the Chart (those marked with an asterisk) which remain subject to Court approval because such claims represent pending applications for the allowance of fees and expenses by professionals employed in these cases. The affected professionals are: (1) Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtors, (2) Cooley Godward LLP, bankruptcy counsel to the Official Committee of Unsecured Creditors, (3) Wickersham & Murphy, a Professional Corporation, special corporate and securities counsel to the Debtors, and (4) Grant Thorton, accountants to the Debtors (collectively, the "Remaining Fee Applications"). The hearings to consider these Remaining Fee Applications are set concurrently with the hearing on this Motion.

The Debtors estimate that by the time of the hearing on this Motion, they will have a total of approximately \$3,796,950 of cash available for payments to holders of allowed administrative claims on their unpaid claims, after accounting for estimated remaining post-petition expenses of the estates and quarterly fees that will be owed to the United States Trustee for the 3rd and 4th quarters of 2009. The Debtors also believe that there will be a total

5

of approximately $3,780,685 of allowed and unpaid administrative claims, assuming that the Court approves the Remaining Fee Applications in their entirety. As described more fully in the annexed Memorandum of Points and Authorities, all allowed secured claims have already been paid in full. If the Court approves the Remaining Fee Applications in their entirety, the Debtors estimate that each holder of an outstanding allowed administrative claim will receive a distribution equal to 100% of the amount of their allowed and unpaid administrative claim. There will be a balance left of approximately $16,000, which, needless to say is *de minimus* to justify the Debtors having to review and object to the thousands of unsecured claims in these cases. Indeed, the process of having to review and object to unsecured claims would result in the estates incurring fees substantially in excess of the remaining balance of $16,000.

The Debtors firmly believe that the relief requested in this Motion is warranted and appropriate and in the overwhelming best interests of these estates. As described in detail below, these cases have now been fully administered. However, confirmation of a plan of reorganization (even a liquidating plan) is not possible given that the cases are either administrative insolvent or there is *de minimus* funds available for unsecured creditors, and the cases should not be converted to Chapter 7 given that there would be nothing for a trustee to do and having a trustee would only add to the administrative costs (thereby increasing the administrative insolvency) of these cases. The Debtors have therefore concluded that dismissing their Chapter 11 bankruptcy cases and distributing all of the remaining funds in these estates to the holders of outstanding allowed administrative claims either in full or on a pro rata basis (as the case may be) is the most efficient and cost effective manner of ending these bankruptcy cases, which have been pending for almost 1.5 years, and getting money to creditors as quickly as possible.

6

**II.**

## **FACTS OF THE CASE**

A.    Background.

The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on July 15, 2008 (the "Petition Date"). The Debtors have been managing their affairs and their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtors operated as an independent, off-price footwear retailer with locations in the Western and Southwestern United States. As of the Petition Date, the Debtors owned and operated approximately 117 retail stores in Washington, Oregon, California, Arizona, Nevada, Texas and New Mexico.

Shortly after the Petition Date, an Official Committee of Unsecured Creditors (the "Committee") was appointed. The Committee was actively engaged throughout these cases through both its bankruptcy counsel, Cooley Godward LLP, and its financial advisors, FTI Consulting.

Due to a number of economic circumstances, the Debtors conducted store liquidations during these cases which enabled the Debtors to essentially convert virtually all of their inventory into cash. The store liquidations were all concluded by the middle of December 2008, and all of the stores have been closed. As described below, the estates have now been fully administered. The Debtors have completed the liquidation of all inventory and other assets of these estates. The Debtors have resolved all pending litigation, including the litigation with the alleged consignors and their senior secured lender, Wells Fargo Retail Finance, LLC ("Wells") which were settled. Following extensive review of all claims which

have been asserted in these cases, and objections filed by the Debtors to certain disputed claims, the Debtors have now ascertained the universe of allowed secured claims and allowed administrative in these cases. All allowed secured claims have been paid in full. All allowed administrative claims have also been determined by the Debtors.

B.    Summary of Liquidation of Assets.

During the early phase of these cases, the Debtors developed a game plan of salvaging the best stores (approximately 64 of them) and then either reorganizing around those stores or selling them as a going concern. However, this original game plan was rendered impossible by the economic meltdown which drastically affected in a negative manner the entire retail industry, necessitating a liquidation of all of the stores. The liquidation of the stores occurred in three traunches. The first consisted of the Debtors' self-liquidation of the 15 stores in Texas and one other store in CA. The second consisted of a 27-store liquidation conducted by Gordon Brothers as the high bidder at the auction for the 27 stores. The third consisted of a 64-store liquidation conducted by Great American as the high bidder at the auction for the 64 Stores. All store liquidations were concluded by the middle of December 2008.

Concurrently with the store liquidations, all leased equipment was returned and surrendered to the equipment lessors. The Debtors also sold all of the remaining residual and miscellaneous personal property assets (such as office furniture, office equipment, fixtures, cash registers, computers, printers, and related information technology equipment, most of which were located in the Debtors' Burbank store and warehouse) which became obsolete as a result of the liquidation.

In early 2009, the Debtors actively pursued sales for the estates' intellectual property assets. Working with the Debtors' financial advisors, the Debtors determined that Dmitry

8

Beinus (the Debtors' former Chief Executive Officer) and one other party unrelated to the Debtors were interested in acquiring the estates' intellectual property. Following an auction, Mr. Beinus was deemed to be the winner of the assets for $11,000; however, the Committee opposed the sale indicating that it desired a longer marketing process through an outside consultant. Therefore, the Committee hired an outside consultant which was employed by the Court. Unfortunately, the outside consultant has not been able to find any buyer for the intellectual property for the last approximately six months.

Other than inventory, personal property and intellectual property, the estates have the following assets, all of which have all been liquidated for the benefit of creditors: (i) recovery of tax refund from the State of California of approximately $200,000, (ii) recovery of claim against insurance policy for losses associated with theft by a former employee in the amount of approximately $820,000, (iii) recovery of letter of credit issued in favor of PG&E in the amount of approximately $120,000, (iv) recovery of reserves taken with respect to merchant accounts in the amount of approximately $100,000, (v) recovery of deposits held by third parties in the amount of approximately $30,000, (v) recovery of the settlement amount agreed to between the Debtors and Romeo & Juliette, Inc. (the settlement is described below), (vi) recovery of insurance refunds for approximately $56,000, and (vii) other miscellaneous funds.

As set forth in the Contreras Declaration, the Debtors have reviewed the payments made by the Debtors within the 90 day period prior to the Petition Date. The Debtors believe that most, if not all, of such payment were in the ordinary course of the Debtors' business and/or new value was subsequently given by the creditors. Additionally, the Committee has also sought to employ counsel on a contingency basis to pursue possible claims against the Debtors' former officers and directors; however, no counsel was found willing to be employed

9

on a full contingency basis. Therefore, no assets remain for a Chapter 7 trustee to liquidate and the cases have been fully administered already by the Debtors as debtors in possession.

As a result of these collection and recovery efforts undertaking by the Debtors and their professionals, as of the filing date of this Motion, the Debtors have cash on hand of approximately \$3,821,000. The Debtors will have certain minor operational expenses that need to be paid before distributions to administrative creditors are made and quarterly fees owed to the United States Trustee for the 3rd and 4th quarters of 2009, which are described below and are estimated to total approximately \$24,050.

C.    Summary of Litigation and Settlements with Alleged Consignors.

During these cases, significant disputes arose between the Debtors, the Debtors' senior secured lender Wells, and the Committee, on the one hand, and a group of parties who claimed to be consignors of the Debtors, on the other hand. In order to grasp the magnitude and scope of these disputes, the Court set a bar date of November 20, 2008 for entities who contend to be consignors to file lawsuits against these estates. Eleven parties filed such consignment related lawsuits, seeking declaratory relief that they were "true" consignors. Many of these complaints named Wells, the Committee, and officers and employees of the Debtors as additional defendants.

While the Debtors' pre-petition transactions with each of the eleven alleged consignors which filed lawsuits against the estates were subject to specific terms set forth in written and/or oral agreements between the parties, generally, all of these alleged consignors contended that they sold their product to the Debtors on a "true" consignment basis. As a result, they contended that the goods were not property of the Debtors' estates and that they were entitled to the benefit of the terms of their pre-bankruptcy agreements with the Debtors

10

rather than be deemed general unsecured creditors along with the Debtors' regular trade creditors who sold goods (mostly shoes) to the Debtors pre-bankruptcy on open credit and were not paid for such goods by the Debtors. In the alternative to their main argument that they should be treated as "true" consignors to the Debtors, many of these alleged consignors also asserted administrative claims based on reclamation pursuant to Section 503(b)(9) of the Bankruptcy Code.

The Debtors answered the complaints. The Debtors disagreed with the contentions asserted by the alleged consignors, and argued that their agreements with the alleged consignors were not consignment agreements, but rather, clearly a simple contract for the sale of goods. In addition, the Debtors contended that, based on a review of the Debtors' books and records, the estates may have avoidance claims for relief against the alleged consignors pursuant to Sections 547 and 550 of the Bankruptcy Code.

In addition, the Debtors had an additional dispute with alleged consignor Romeo & Juliette, Inc. ("Romeo") involving post-petition purchase orders placed by the estates which had been paid for by these estates in the total sum of $267,000, but which were never fulfilled by Romeo. As a result, the Debtors commenced an adversary proceeding by filing a complaint against Romeo and its principal, Thomas Romeo, for, among other things, the turnover of the funds.

After months of reviewing and analyzing the facts and legal issues involved, a large number of negotiations between all of the parties, and propounding and delivery of discovery by the Debtor and the other parties to the litigation, the Debtors, working closely with the Committee, reached settlements with all of the alleged consignors. These settlements were approved by the Court, and have been consummated with the Debtors having paid the

11

1  settlement amounts to the alleged consignors, and the estates having received the settlement
2  amount from Romeo.

3      D.    Summary of Litigation and Settlements with Wells.

4      Wells also sued the Debtors seeking a determination as to the validity and priority of
5  its lien, and the amount of its senior secured claim. If the alleged consignors prevailed on
6  their theory of the existence of "true" consignment and given the amounts which they claimed
7  they were owed by the estates, Wells could have been determined to be an undersecured
8  creditor. Therefore, it made sense to resolve the litigation with the alleged consignors before
9  addressing the litigation with Wells.
10

11     Following the completion of settlements with the alleged consignors, the Debtors and
12  the Committee turned their attention and focus to attempting to resolve their disputes with
13  Wells. Based on the settlements reached with the alleged consignors, the remaining cash in
14  the estates, and the amount of claim asserted by Wells, it was clear that Wells was an
15  oversecured creditor.    However, the Debtors and the Committee argued that certain
16  components of Wells' claim was unreasonable, and also disputed the allowability and/or the
17  amount of certain elements of Wells' claim, including, without limitation, a prepayment
18  premium, default interest, and attorneys' fees and costs. In turn, Wells contended that all of
19  the elements of its claim were allowable under the pre-petition loan agreements and cash
20  collateral orders entered by this Court, and, therefore, were appropriate and reasonable.
21
22

23     Recognizing the risks, costs and delays associated with litigation, and mindful of the
24  settlements that have been reached between the estates, the Committee, Wells and the alleged
25  consignors which resulted in a determination that the entirety of the claim asserted by Wells is
26  fully secured, the parties engaged in settlement negotiations, which were fruitful, and resulted
27
28

12

1   in a settlement whereby Wells essentially agreed to reduce its claim by approximately

2   $275,000.    The Court approved the settlement, and the settlement has been fully

3   consummated.

4       E.      Summary of Allowed Secured Claims other than the Claim of Wells.

5       Aside from Wells, the only other entities asserting secured claims in these cases were

6   taxing authorities from the States of California, Oregon, Washington, and Texas. The Debtors

7   filed objections to all of the secured claims arguing that these taxing authorities were not

8   entitled to secured claims under state laws; however, the Oregon and Texas taxing authorities

9   were successful in showing that their state laws provided for liens against the estates' personal

10  property. The Debtors also settled one claim objection with a taxing authority in the State of

11  California.

12

13      All of the Debtors' objections to the secured claims of these taxing authorities have

14  been resolved either through settlement or orders of the Court. All secured claims allowed in

15  favor of these taxing authorities have also been paid.

16

17      Other than the secured claims asserted by Wells and the taxing authorities which were

18  allowed secured claims (all of which have been paid in full pursuant to Court orders), there are

19  no secured claims asserted by any other creditor in these cases.[1]

20      F.      Summary of Allowed Administrative Claims.

21

22      Attached as Exhibit "1" to the annexed Contreras Declaration is a chart (the "Chart"),

23  which sets forth the name of each holder of an outstanding allowed administrative claim and

24

25  [1] Iron Mountain Information Management, Inc. ("Iron Mountain") filed a claim which asserts both an unsecured
    claim and a secured claim. The secured claim is for $925 which is allegedly based on $1.00 per 925 boxes of
26  documents in storage. The Debtors are in the process of arranging with Iron Mountain a destruction of the stored
    documents as they are no longer necessary to the administration of these estates. Iron Mountain and the Debtors
27  have also agreed upon the amount of administrative claim that Iron Mountain will have in these cases. As a result
    of the foregoing, the "secured" claim previously asserted by Iron Mountain has been dealt with and is not at issue
28  in these cases.

13

the amount of their unpaid and outstanding allowed administrative claim. There are four claims in the Chart (those marked with an asterisk) which remain subject to Court approval because such claims represent pending applications for the allowance of fees and expenses by professionals employed in these cases. The affected professionals are: (1) Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtors, (2) Cooley Godward LLP, bankruptcy counsel to the Official Committee of Unsecured Creditors, (3) Wickersham & Murphy, a Professional Corporation, special corporate and securities counsel to the Debtors, and (4) Grant Thorton, accountants to the Debtors (collectively, the "Remaining Fee Applications"). The hearings to consider these Remaining Fee Applications are set concurrently with the hearing on this Motion.

As set forth in the Exhibit "1" attached to the Contreras Declaration, the allowed administrative claims of these cases are held by (i) professionals employed at the expense of these estates, (ii) landlords for post-petition rents and charges, and (iii) trade creditors and other miscellaneous creditors on account of requests for allowance of administrative claims which the Debtors did not object to, orders of the Court on requests for allowance of administrative claims which the Debtors objected to, or ordinary post-petition account payable which the Debtors had not previously paid. Each of these categories are described briefly below:

(1)     Professionals.  Pursuant to orders of the Court, the Debtors have employed 7 professionals:

- Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB") as their bankruptcy counsel,

- FocalPoint Securities as their financial advisor,

14

- Manatt, Phelps & Phillips, LLP as their special labor and employment counsel,

- Wickersham & Murphy as their special corporate and securities counsel,

- Grant Thornton as their accountant,

- Dake & Associates as their real estate consultant, and

- IP Recovery, Inc. as their intellectual property consultant.

The Committee has employed 2 professionals:

- Cooley Godward Kronish, LLP ("Cooley") as its bankruptcy counsel, and

- FTI Consulting as its financial advisors.

All of these professionals other than LNBRB, Wickersham & Murphy, Grant Thorton and Cooley have filed their final fee applications, which have been approved by the Court. The unpaid portions of the fees and costs allowed by the Court on a final basis to these professionals are set forth in the Chart attached as Exhibit "1" to the Contreras Declaration. LNBRB, Wickersham & Murphy, Grant Thorton and Cooley have filed the Remaining Fee Applications, and the hearings on these applications have been set concurrently with the hearing on the Motion. The Chart attached as Exhibit "1" to the Contreras Declaration currently reflects the unpaid portions of the fees and costs which would be owed to these professionals assuming that the Court approves these professionals' final fee applications as requested. If all of the Remaining Fee Applications are approved by the Court on a final basis, the total unpaid fees and expenses owed to professionals are approximately **$1,997,381.25**.

1  (2)    Landlords.  The next group of holders of allowed administrative claims is prior
2  landlords of the Debtors, which have asserted administrative claims for, among other things,
3  July stub rent, other unpaid post-petition rents and other charges.

4         During these cases, the Court indicated that it would be adopting the "billing date"
5  approach with respect to the payment of rents (i.e., that rents are deemed due when billed and
6  not on a pro rated basis).  Most, if not all, of the Debtors' leases provided for rents to be paid
7  by the 1st of the calendar month; therefore, based on the "billing date" approach, the entire
8
9  month became due and owing on the 1st of the calendar month.  Based on this approach, and
10 the Debtors having filed their cases on July 15, 2008, the Court ruled that July 2008 rents were
11 pre-petition obligations of the estates.  However, pursuant to Section 503(b)(1) of the
12 Bankruptcy Code, the landlords were nonetheless given administrative priority status for the
13 July stub rent (i.e., the rents due for the period from July 15-30, 2008).  Additionally, if the
14 Debtors rejected a lease on any date that was after the first of the month, because of the
15
16 "billing date" approach, the estates were burdened with administrative claim exposure for the
17 entire month, and would not have been able to "cut off" its liability through the date of
18 rejection.   With over 100 leases as of the Petition Date, the Debtors estimated that the
19 administrative liability resulting for the estates from the last month of store occupancy could
20 be as high as $3 million.
21

22        Most of the Debtors' landlords filed requests for payment of administrative claims on a
23 variety of grounds, including, without limitation, unpaid post-petition rents (including July
24 stub rent).  Recognizing the Court's views and indications that it would be inclined to adopt
25 the "billing date" approach, the Debtors reached out to all of the landlords which had filed
26 requests for administrative claims to seek some reduction of their administrative claims.
27

28
                                                16

1
2    These efforts were successful and significantly reduced the actual administrative liability
exposure in favor of landlords to **$1,332,364.32** as reflected in the Chart.

3        (3)    Other Creditors.  The last group of holders of allowed administrative claims is
4    made up primarily of vendors and creditors which (a) timely filed requests for allowance of
5    administrative claims which the Debtors did not object to, (b) were allowed administrative
6    claims by orders of the Court following objections by the Debtors to their respective request
7    for allowance of administrative claims, and (c) were not paid for post-petition product or
8    services in the ordinary course of the Debtors' business prior to the hearing on the Motion.
9    
10    The Court established November 20, 2008 as the bar date for creditors to file proofs of claim,
11    and for creditors asserting administrative expense priority claims to file requests for the
12    allowance and payment of administrative expense priority claims.  The Debtors obtained
13    copies of all proofs of claim and requests for allowance and payment of administrative
14    expenses that were filed (whether or not they were filed before or after the bar date of
15    November 20, 2008), and reviewed each of the claims and requests.  It was necessary to
16    review all of the proofs of claim because many creditors asserted administrative claims
17    through the use of the proof of claim form even though they were not supposed to do this.
18    

19    The Debtors objected to many requests for allowance and payment of administrative
20    claims.  All of these objections have either been resolved by settlement, or resolved by orders
21    entered by the Court either sustaining or overruling the Debtors' objections.  All claim
22    objections have now been resolved.  The Chart reflects total allowed administrative liability in
23    favor of creditors other than professionals and landlords of **$450,938.69**.
24    
25    
26    
27    
28

# III.

## SUMMARY OF THE ECONOMICS

Cash on Hand (as of October 15, 2009) -                    $3,821,000  (est.)

Less:  Remaining Fees of Laura Contreras and Allan Levine    [$500 for Allan Levine]
(two remaining employees of the Debtors which are rendering  [$2,500 for Laura Contreras]
services to the estates on an hourly basis) --

Less:  Quarterly Fees for the 3rd and 4th quarters due to the    [$325 to $650 for 3rd
United States Trustee –                                        [$10,400 for 4th]

Less" Miscellaneous Business Expenses through November    [$10,000]
9, 2009 --

Net Balance for Administrative Creditors -                $3,796,950

Total Administrative Claims (est.) -                      $3,780,685

% Payout to Administrative Claims (est.) -                100% (est.)

Balance Remaining                                        $16,000 (est.)

The above summary shows that the estates may be left a balance left of approximately

$16,000, which, needless to say is *de minimus* to justify the Debtors having to review and

object to the thousands of unsecured claims in these cases.  Indeed, the process of having to

review and object to unsecured claims would result in the estates incurring fees substantially

in excess of the remaining balance of $16,000.  Additionally, it is possible that this estimated

balance may be much smaller than expected if the miscellaneous business expenses or fees of

the estates' remaining personnel are higher.

## IV.

## THE DISMISSAL OF THE CASES AND THE PROPOSED DISTRIBUTION OF THE

## REMAINING FUNDS IN THESE ESTATES

Given the administrative insolvency of these cases or *de minimus* funds available for unsecured creditors, as described above, the Debtors cannot confirm a plan of reorganization (or even a liquidating plan) in these cases. Therefore, the two options for exiting these Chapter 11 cases are (1) to convert these cases to Chapter 7, or (2) dismiss the cases. The Debtors have determined that dismissing the cases is a far better alternative than converting the cases to Chapter 7 for at least two reasons:

First, all assets of the estates that can be monetized have been liquidated and converted into cash. The Debtors have also fully evaluated and vetted possible claims and causes of action (including preference and fraudulent conveyance claims), and have determined that the viability of such claims is speculative, and spending the limited financial resources of these estate to pursue such claims which would further dilute the distribution to administrative claim creditors would not be in the best interests of the estates. Indeed, based on the Debtors' review of the payments made by the Debtors within the 90 day period prior to the Petition Date, the Debtors believe that most, if not all, of such payment were in the ordinary course of the Debtors' business and/or new value was subsequently given by the creditors. Additionally, the Committee has also sought to employ counsel on a contingency basis to pursue possible claims against the Debtors' former officers and directors; however, no counsel was found willing to be employed on a full contingency basis. Therefore, no assets remain for a Chapter 7 trustee to liquidate and the cases have been fully administered already by the Debtors as debtors in possession.

1    Second, the appointment of a Chapter 7 trustee will add further administrative

2    expenses to the estates, which will have the effect of reducing the return to the administrative

3    claim creditors and force administrative creditors to have to wait even longer to receive money

4    on their claims.  Most of these creditors have been waiting for over a year and one-half to

5    receive payment. A Chapter 7 trustee is likely to take at least several months to review and

6    make an independent assessment of the cases.

7    Based on the foregoing, the Debtors submit that dismissing the cases is in the best

8    interests of the estates.

9

10                                        V.

11    **THE COURT SHOULD APPROVE THE DISMISSAL OF THE DEBTORS'**

12                              **CHAPTER 11 CASES**

13    Section 1112(b) of the Bankruptcy Code provides in relevant part as follows:

14
            [O]n request of a party in interest, and after notice and a hearing,
15          . . . the court shall convert a case under this chapter to a case
            under chapter 7 or dismiss a case under this chapter, whichever
16          is in the best interests of creditors and the estate, if the movant
            establishes cause.
17

18    11 U.S.C. § 1112(b).  Section 1112(b) of the Bankruptcy Code contains 16 examples of what

19    constitutes "cause."  Notably, the 16 examples of "cause" for dismissal set forth in the

20    Bankruptcy Code generally relate to bad acts by a debtor.  This is not surprising because

21
      dismissal is usually seen as the ultimate penalty when a debtor fails to proceed as required by
22
      the Bankruptcy Code and Bankruptcy Rules. See In re Kimble, 96 B.R. 305, 307 (Bankr. D.
23

24    Mont. 1988).  The foregoing examples of cause for dismissal are not exclusive and "'[a] court

25    may consider other factors as they arise and may 'use its equitable powers to reach an

26    appropriate result in individual cases.'"  In re Mechanical Maintenance, Inc., 128 B.R. 382,

27

28                                        20

386 (E.D. Pa. 1991) (quoting S.Rep No. 989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5903); see also 11 U.S.C. § 102(3).

Once it is determined that "cause" exists, the Court must determine whether to convert or dismiss the case based on what is in the best interests of creditors and the estate. In re Staff Investment Co., 146 B.R. 256, 260 (Bankr. E.D. Cal. 1993); In re Evans, 2002 WL 33939733, 1 (Bankr. D. Idaho 2002). This determination is committed to the Court's wide discretion. Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities), 248 B.R. 368, 375 (9th Cir. BAP 2000); Kimble, 96 B.R. at 307. A "[d]ebtor's request [to dismiss its Chapter 11 bankruptcy case] should ordinarily be granted unless some 'plain legal prejudice' will result to the creditors.'" Kimble, 96 B.R. at 907 (quoting In re Geller, 74 B.R. 685, 688-89 (Bankr. E.D. Pa. 1987, citing In re Hall, 15 B.R. 913, 915-16 (9th Cir. BAP 1981; In re International Airport Inn Partnership, 517 F.2d 510, 512 (9th Cir. 1975)).

These were difficult bankruptcy cases. The economy was crumbling and the credit markets dried up contemporaneously with the Debtors' filing, and the unforeseeable and dramatic market forces, combined with the demands of Wells, required the Debtors to quickly act to develop and implement an exit strategy, yet remain totally flexible to adopting changes. The Debtors and their counsel faced an enormity of problems, with many of the problems converging all at once at the outset of the cases – i.e., cash collateral, lease and landlord issues, store liquidation issues, consignment issues, and operating issues including key employee issues. However, due to the extraordinary efforts of the Debtors' management, the Debtors' professionals and the professionals employed by the Committee, the Debtors were able to liquidate every one of their stores, settle and resolve all of the disputes with the alleged

21

consignors, Wells, landlords and other creditors, and recover other assets for the benefit of creditors.

Now, almost 1.5 years later, these estates are left with some funds resulting from the liquidation of the Debtors' assets primarily from the efforts made by the Debtors, their staff, and the Debtors' and the Committee's bankruptcy counsel, but allowed administrative claims exceed the amount of those funds. It is not possible for the Debtors to confirm a plan of reorganization (or even a liquidating plan) because it may not possible for the Debtors to satisfy all of the plan confirmations requirements of Section 1129(a) of the Bankruptcy Code. The question then is what is the best way for the Debtors to distribute their funds to holders of outstanding allowed administrative claims, all or nearly all of whom have not been paid for more than one and one-half years? The Debtors strongly believe that the only sensible option facing these estates is a prompt dismissal of these cases with a distribution of all of the estates' funds to the holders of outstanding allowed administrative claims. No conceivable benefit could be obtained from a conversion of these cases to Chapter 7 as there is nothing left to administer. Similarly, no benefit would be served by having the Debtors remain in Chapter 11 as these cases have now been fully administered. The Debtors believe that the dismissal sought by the Debtors is the result desired by the holders of administrative claims.

## VI.

## CONCLUSION

The Debtors submit that "cause" exists for the Court to grant the relief requested by the Debtors and that doing so is in the overwhelming best interests of these estates. The Debtors submit that none of their creditors will be prejudiced by the requested dismissal. The Debtors therefore respectfully request that the Court:

22

1.    approve the immediate dismissal of the Debtors' Chapter 11 bankruptcy cases;

2.    authorize the Debtors to distribute all of the remaining funds in these estates to all holders of outstanding allowed administrative claims either in full or on a pro rata basis, as the case may be, in accordance with the Chart, subject to any modifications which need to be made to the Chart resulting from orders issued by the Court in connection with the Remaining Fee Applications; and

3.    grant such other and further relief as the Court deems just and proper under the circumstances of these cases.

Dated: October 19, 2009

SHOE PAVILION INC.
SHOE PAVILION CORPORATION

By: _____
    Ron Bender
    Monica Y. Kim
    Juliet Y. Oh
    LEVENE, NEALE, BENDER,
    RANKIN & BRILL L.L.P.
    Attorneys for Chapter 11
    Debtors and Debtors in Possession

23

## DECLARATION OF LAURA CONTRERAS

I, Laura Contreras, hereby declare as follows:

1.    I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would testify competently with respect thereto.    Where facts are alleged upon information and belief, I believe them to be true and correct.

2.    I am the Interim Chief Financial Officer of Shoe Pavilion Inc. and Shoe Pavilion Corporation, the debtors and debtors in possession in the above-referenced, jointly administrated, Chapter 11 bankruptcy cases (collectively, the "Debtors").

3.    I make this Declaration in support of the Debtors' motion to dismiss their Chapter 11 bankruptcy cases and to distribute all of their remaining funds to the holders of all outstanding allowed administrative claims either in full or on a pro rata basis, as the case may be.

4.    The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on July 15, 2008 (the "Petition Date").    The Debtors have been managing their affairs and their bankruptcy estates as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    The Debtors operated as an independent, off-price footwear retailer with locations in the Western and Southwestern United States.    As of the Petition Date, the Debtors owned and operated approximately 117 retail stores in Washington, Oregon, California, Arizona, Nevada, Texas and New Mexico.

6.    Shortly after the Petition Date, an Official Committee of Unsecured Creditors (the "Committee") was appointed.    The Committee was actively engaged throughout these cases through both its bankruptcy counsel, Cooley Godward LLP, and its financial advisors,

24

FTI Consulting.

7.    Due to a number of economic circumstances, the Debtors conducted store liquidations during these cases which enabled the Debtors to essentially convert virtually all of their inventory into cash.    The store liquidations were all concluded by the middle of December 2008, and all of the stores have been closed.  As described below, the estates have now been fully administered. The Debtors have completed the liquidation of all inventory and other assets of these estates.  The Debtors have resolved all pending litigation, including the litigation with the alleged consignors and their senior secured lender, Wells Fargo Retail Finance, LLC ("Wells") which were settled.  Following extensive review of all claims which have been asserted in these cases, and objections filed by the Debtors to certain disputed claims, the Debtors have now ascertained the universe of allowed secured claims and allowed administrative in these cases.  All allowed secured claims have been paid in full.  All allowed administrative claims have also been determined by the Debtors.

8.    During the early phase of these cases, the Debtors developed a game plan of salvaging the best stores (approximately 64 of them) and then either reorganizing around those stores or selling them as a going concern.  However, this original game plan was rendered impossible by the economic meltdown which drastically affected in a negative manner the entire retail industry, necessitating a liquidation of all of the stores.  The liquidation of the stores occurred in three traunches.  The first consisted of the Debtors' self-liquidation of the 15 stores in Texas and one other store in CA.  The second consisted of a 27-store liquidation conducted by Gordon Brothers as the high bidder at the auction for the 27 stores.  The third consisted of a 64-store liquidation conducted by Great American as the high bidder at the

auction for the 64 Stores. All store liquidations were concluded by the middle of December 2008.

9.    Concurrently with the store liquidations, all leased equipment was returned and surrendered to the equipment lessors. The Debtors also sold all of the remaining residual and miscellaneous personal property assets (such as office furniture, office equipment, fixtures, cash registers, computers, printers, and related information technology equipment, most of which were located in the Debtors' Burbank store and warehouse) which became obsolete as a result of the liquidation.

10.    In early 2009, the Debtors actively pursued sales for the estates' intellectual property assets. Working with the Debtors' financial advisors, the Debtors determined that Dmitry Beinus (the Debtors' former Chief Executive Officer) and one other party unrelated to the Debtors were interested in acquiring the estates' intellectual property. Following an auction, Mr. Beinus was deemed to be the winner of the assets for $11,000; however. the Committee opposed the sale indicating that it desired a longer marketing process through an outside consultant.    Therefore, the Committee hired an outside consultant which was employed by the Court. Unfortunately, the outside consultant has not been able to find any buyer for the intellectual property for the last approximately six months.

11.    Other than inventory, personal property and intellectual property, the estates have the following assets, all of which have all been liquidated for the benefit of creditors: (i) recovery of tax refund from the State of California of approximately $200,000, (ii) recovery of claim against insurance policy for losses associated with theft by a former employee in the amount of approximately $820,000, (iii) recovery of letter of credit issued in favor of PG&E in the amount of approximately $120,000, (iv) recovery of reserves taken with respect to

26

merchant accounts in the amount of approximately $100,000, (v) recovery of deposits held by third parties in the amount of approximately $30,000, (v) recovery of the settlement amount agreed to between the Debtors and Romeo & Juliette, Inc. (the settlement is described below), (vi) recovery of insurance refunds for approximately $56,000, and (vii) other miscellaneous funds. As set forth in the Contreras Declaration, the Debtors have reviewed the payments made by the Debtors within the 90 day period prior to the Petition Date. The Debtors believe that most, if not all, of such payment were in the ordinary course of the Debtors' business and/or new value was subsequently given by the creditors. Additionally, the Committee has also sought to employ counsel on a contingency basis to pursue possible claims against the Debtors' former officers and directors; however, no counsel was found willing to be employed on a full contingency basis. Therefore, no assets remain for a Chapter 7 trustee to liquidate and the cases have been fully administered already by the Debtors as debtors in possession.

12.    As a result of these collection and recovery efforts undertaking by the Debtors and their professionals, as of the filing date of this Motion, the Debtors have cash on hand of approximately $3,821,000. The Debtors will have certain minor operational expenses that need to be paid before distributions to administrative creditors are made and quarterly fees owed to the United States Trustee for the 3rd and 4th quarters of 2009, which are described below and are estimated to total approximately $24,050.

13.    During these cases, significant disputes arose between the Debtors, the Debtors' senior secured lender Wells, and the Committee, on the one hand, and a group of parties who claimed to be consignors of the Debtors, on the other hand. In order to grasp the magnitude and scope of these disputes, the Court set a bar date of November 20, 2008 for entities who contend to be consignors to file lawsuits against these estates. Eleven parties

filed such consignment related lawsuits, seeking declaratory relief that they were "true" consignors. Many of these complaints named Wells, the Committee, and officers and employees of the Debtors as additional defendants.

14. While the Debtors' pre-petition transactions with each of the eleven alleged consignors which filed lawsuits against the estates were subject to specific terms set forth in written and/or oral agreements between the parties, generally, all of these alleged consignors contended that they sold their product to the Debtors on a "true" consignment basis. As a result, they contended that the goods were not property of the Debtors' estates and that they were entitled to the benefit of the terms of their pre-bankruptcy agreements with the Debtors rather than be deemed general unsecured creditors along with the Debtors' regular trade creditors who sold goods (mostly shoes) to the Debtors pre-bankruptcy on open credit and were not paid for such goods by the Debtors. In the alternative to their main argument that they should be treated as "true" consignors to the Debtors, many of these alleged consignors also asserted administrative claims based on reclamation pursuant to Section 503(b)(9) of the Bankruptcy Code.

15. The Debtors answered the complaints. The Debtors disagreed with the contentions asserted by the alleged consignors, and argued that their agreements with the alleged consignors were not consignment agreements, but rather, clearly a simple contract for the sale of goods. In addition, the Debtors contended that, based on a review of the Debtors' books and records, the estates may have avoidance claims for relief against the alleged consignors pursuant to Sections 547 and 550 of the Bankruptcy Code.

16. In addition, the Debtors had an additional dispute with alleged consignor Romeo & Juliette, Inc. ("Romeo") involving post-petition purchase orders placed by the

28

estates which had been paid for by these estates in the total sum of $267,000, but which were never fulfilled by Romeo. As a result, the Debtors commenced an adversary proceeding by filing a complaint against Romeo and its principal, Thomas Romeo, for, among other things, the turnover of the funds.

17. After months of reviewing and analyzing the facts and legal issues involved, a large number of negotiations between all of the parties, and propounding and delivery of discovery by the Debtor and the other parties to the litigation, the Debtors, working closely with the Committee, reached settlements with all of the alleged consignors. These settlements were approved by the Court, and have been consummated with the Debtors having paid the settlement amounts to the alleged consignors, and the estates having received the settlement amount from Romeo.

18. Wells also sued the Debtors seeking a determination as to the validity and priority of its lien, and the amount of its senior secured claim. If the alleged consignors prevailed on their theory of the existence of "true" consignment and given the amounts which they claimed they were owed by the estates, Wells could have been determined to be an undersecured creditor. Therefore, it made sense to resolve the litigation with the alleged consignors before addressing the litigation with Wells.

19. Following the completion of settlements with the alleged consignors, the Debtors and the Committee turned their attention and focus to attempting to resolve their disputes with Wells. Based on the settlements reached with the alleged consignors, the remaining cash in the estates, and the amount of claim asserted by Wells, it was clear that Wells was an oversecured creditor. However, the Debtors and the Committee argued that certain components of Wells' claim was unreasonable, and also disputed the allowability

29

and/or the amount of certain elements of Wells' claim, including, without limitation, a prepayment premium, default interest, and attorneys' fees and costs. In turn, Wells contended that all of the elements of its claim were allowable under the pre-petition loan agreements and cash collateral orders entered by this Court, and, therefore, were appropriate and reasonable.

20.    Recognizing the risks, costs and delays associated with litigation, and mindful of the settlements that have been reached between the estates, the Committee, Wells and the alleged consignors which resulted in a determination that the entirety of the claim asserted by Wells is fully secured, the parties engaged in settlement negotiations, which were fruitful, and resulted in a settlement whereby Wells essentially agreed to reduce its claim by approximately $275,000.    The Court approved the settlement, and the settlement has been fully consummated.

21.    Aside from Wells, the only other entities asserting secured claims in these cases were taxing authorities from the States of California, Oregon, Washington, and Texas. The Debtors filed objections to all of the secured claims arguing that these taxing authorities were not entitled to secured claims under state laws; however, the Oregon and Texas taxing authorities were successful in showing that their state laws provided for liens against the estates' personal property.    The Debtors also settled one claim objection with a taxing authority in the State of California.

22.    All of the Debtors' objections to the secured claims of these taxing authorities have been resolved either through settlement or orders of the Court.    All secured claims allowed in favor of these taxing authorities have also been paid.

30

23.     Other than the secured claims asserted by Wells and the taxing authorities which were allowed secured claims (all of which have been paid in full pursuant to Court orders), there are no secured claims asserted by any other creditor in these cases.[2]

24.     Attached hereto as Exhibit "1" is a chart (the "Chart"), which sets forth the name of each holder of an outstanding allowed administrative claim and the amount of their unpaid and outstanding allowed administrative claim.  There are four claims in the Chart (those marked with an asterisk) which remain subject to Court approval because such claims represent pending applications for the allowance of fees and expenses by professionals employed in these cases.  The affected professionals are: (1) Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtors, (2) Cooley Godward LLP, bankruptcy counsel to the Official Committee of Unsecured Creditors, (3) Wickersham & Murphy, a Professional Corporation, special corporate and securities counsel to the Debtors, and (4) Grant Thorton, accountants to the Debtors (collectively, the "Remaining Fee Applications").  The hearings to consider these Remaining Fee Applications are set concurrently with the hearing on this Motion.

25.     As set forth in the Exhibit "1" attached hereto, the allowed administrative claims of these cases are held by (i) professionals employed at the expense of these estates, (ii) landlords for post-petition rents and charges, and (iii) trade creditors and other miscellaneous creditors on account of requests for allowance of administrative claims which the Debtors did not object to, orders of the Court on requests for allowance of administrative claims which the

---

[2] Iron Mountain Information Management, Inc. ("Iron Mountain") filed a claim which asserts both an unsecured claim and a secured claim. The secured claim is for $925 which is allegedly based on $1.00 per 925 boxes of documents in storage. The Debtors are in the process of arranging with Iron Mountain a destruction of the stored documents as they are no longer necessary to the administration of these estates. Iron Mountain and the Debtors have also agreed upon the amount of administrative claim that Iron Mountain will have in these cases. As a result of the foregoing, the "secured" claim previously asserted by Iron Mountain has been dealt with and is not at issue in these cases.

1   Debtors objected to, or ordinary post-petition account payable which the Debtors had not

2   previously paid.  Each of these categories are described briefly below.

3       26.    Professionals.  Pursuant to orders of the Court, the Debtors have employed 7

4   professionals:

5           -   Levene, Neale, Bender, Rankin & Brill L.L.P. ("LNBRB") as their

6               bankruptcy counsel,

7           -   FocalPoint Securities as their financial advisor,

8

9           -   Manatt, Phelps & Phillips, LLP as their special labor and employment

10              counsel,

11          -   Wickersham & Murphy as their special corporate and securities counsel,

12          -   Grant Thornton as their accountant,

13          -   Dake & Associates as their real estate consultant, and

14

15          -   IP Recovery, Inc. as their intellectual property consultant.

16      27.    The Committee has employed 2 professionals:

17          -   Cooley Godward Kronish, LLP ("Cooley") as its bankruptcy counsel, and

18          -   FTI Consulting as its financial advisors.

19      28.    All of these professionals other than LNBRB, Wickersham & Murphy, Grant

20  Thorton and Cooley have filed their final fee applications, which have been approved by the

21
    Court.  The unpaid portions of the fees and costs allowed by the Court on a final basis to these
22

23  professionals are set forth in the Chart attached as Exhibit "1" to the Contreras Declaration.

24  LNBRB, Wickersham & Murphy, Grant Thorton and Cooley have filed the Remaining Fee

25  Applications, and the hearings on these applications have been set concurrently with the

26  hearing on the Motion.  The Chart attached as Exhibit "1" to the Contreras Declaration

27

28

currently reflects the unpaid portions of the fees and costs which would be owed to these professionals assuming that the Court approves these professionals' final fee applications as requested. If all of the Remaining Fee Applications are approved by the Court on a final basis, the total unpaid fees and expenses owed to professionals are approximately **$1,997,381.25**.

29.    Landlords.    The next group of holders of allowed administrative claims is prior landlords of the Debtors, which have asserted administrative claims for, among other things, July stub rent, other unpaid post-petition rents and other charges.

30.    During these cases, the Court indicated that it would be adopting the "billing date" approach with respect to the payment of rents (i.e., that rents are deemed due when billed and not on a pro rated basis). Most, if not all, of the Debtors' leases provided for rents to be paid by the 1st of the calendar month; therefore, based on the "billing date" approach, the entire month became due and owing on the 1st of the calendar month. Based on this approach, and the Debtors having filed their cases on July 15, 2008, the Court ruled that July 2008 rents were pre-petition obligations of the estates. However, pursuant to Section 503(b)(1) of the Bankruptcy Code, the landlords were nonetheless given administrative priority status for the July stub rent (i.e., the rents due for the period from July 15-30, 2008). Additionally, if the Debtors rejected a lease on any date that was after the first of the month, because of the "billing date" approach, the estates were burdened with administrative claim exposure for the entire month, and would not have been able to "cut off" its liability through the date of rejection. With over 100 leases as of the Petition Date, the Debtors estimated that the administrative liability resulting for the estates from the last month of store occupancy could be as high as $3 million.

33

31.    Most of the Debtors' landlords filed requests for payment of administrative claims on a variety of grounds, including, without limitation, unpaid post-petition rents (including July stub rent). Recognizing the Court's views and indications that it would be inclined to adopt the "billing date" approach, the Debtors reached out to all of the landlords which had filed requests for administrative claims to seek some reduction of their administrative claims. These efforts were successful and significantly reduced the actual administrative liability exposure in favor of landlords to **$1,332,364.32** as reflected in the Chart.

32.    Other Creditors. The last group of holders of allowed administrative claims is made up primarily of vendors and creditors which (a) timely filed requests for allowance of administrative claims which the Debtors did not object to, (b) were allowed administrative claims by orders of the Court following objections by the Debtors to their respective request for allowance of administrative claims, and (c) were not paid for post-petition product or services in the ordinary course of the Debtors' business prior to the hearing on the Motion. The Court established November 20, 2008 as the bar date for creditors to file proofs of claim, and for creditors asserting administrative expense priority claims to file requests for the allowance and payment of administrative expense priority claims. The Debtors obtained copies of all proofs of claim and requests for allowance and payment of administrative expenses that were filed (whether or not they were filed before or after the bar date of November 20, 2008), and reviewed each of the claims and requests. It was necessary to review all of the proofs of claim because many creditors asserted administrative claims through the use of the proof of claim form even though they were not supposed to do this.

33.    The Debtors objected to many requests for allowance and payment of

34

administrative claims. All of these objections have either been resolved by settlement, or resolved by orders entered by the Court either sustaining or overruling the Debtors' objections. All claim objections have now been resolved. The Chart reflects total allowed administrative liability in favor of creditors other than professionals and landlords of **$450,938.69**.

34.    The summary of the economics looks as follows:

| | |
|---|---|
| Cash on Hand (as of October 15, 2009) - | $3,821,000 (est.) |
| Less: Remaining Fees of Laura Contreras and Allan Levine (two remaining employees of the Debtors which are rendering services to the estates on an hourly basis) – | [$500 for Allan Levine] [$2,500 for Laura Contreras] |
| Less: Quarterly Fees for the 3rd and 4th quarters due to the United States Trustee – | [$325 to $650 for 3rd [$10,400 for 4th] |
| Less" Miscellaneous Business Expenses through November 9, 2009 – | [$10,000] |
| Net Balance for Administrative Creditors - | $3,796,950 |
| Total Administrative Claims (est.) - | $3,780,685 |
| % Payout to Administrative Claims (est.) - | 100% (est.) |
| Balance Remaining | $16,000 (est.) |

35.    The above summary shows that the estates may be left a balance left of approximately $16,000, which, needless to say is *de minimus* to justify the Debtors having to review and object to the thousands of unsecured claims in these cases. Indeed, the process of having to review and object to unsecured claims would result in the estates incurring fees substantially in excess of the remaining balance of $16,000. Additionally, it is possible that

this estimated balance may be much smaller than expected if the miscellaneous business expenses or fees of the estates' remaining personnel are higher.

36. Given the administrative insolvency of these cases or *de minimus* funds available for unsecured creditors, as described above, the Debtors cannot confirm a plan of reorganization (or even a liquidating plan) in these cases. Therefore, I believe that there are two options for exiting these Chapter 11 cases are (1) to convert these cases to Chapter 7, or (2) dismiss the cases. The Debtors have determined that dismissing the cases is a far better alternative than converting the cases to Chapter 7 for at least two reasons:

37. First, all assets of the estates that can be monetized have been liquidated and converted into cash. The Debtors have also fully evaluated and vetted possible claims and causes of action (including preference and fraudulent conveyance claims), and have determined that the viability of such claims is speculative, and spending the limited financial resources of these estate to pursue such claims which would further dilute the distribution to administrative claim creditors would not be in the best interests of the estates. Indeed, based on the Debtors' review of the payments made by the Debtors within the 90 day period prior to the Petition Date, the Debtors believe that most, if not all, of such payment were in the ordinary course of the Debtors' business and/or new value was subsequently given by the creditors. Additionally, the Committee has also sought to employ counsel on a contingency basis to pursue possible claims against the Debtors' former officers and directors; however, no counsel was found willing to be employed on a full contingency basis. Therefore, no assets remain for a Chapter 7 trustee to liquidate and the cases have been fully administered already by the Debtors as debtors in possession.

38.    Second, I believe that the appointment of a Chapter 7 trustee will add further administrative expenses to the estates, which will have the effect of reducing the return to the administrative claim creditors and force administrative creditors to have to wait even longer to receive money on their claims. Most of these creditors have been waiting for over a year and one-half to receive payment. A Chapter 7 trustee is likely to take at least several months to review and make an independent assessment of the cases.

Based on the foregoing, the Debtors submit that dismissing the cases is in the best interests of the estates.

I declare that the foregoing is true and correct under penalty of perjury.

Executed this 19th day of October 2009 at Los Angeles, California.

LAURA CONTRERAS

37

**EXHIBIT 1**

**SHOE PAVILION**
**EXHIBIT 1**
(Allowed Administrative Claims) – Part 1 of 3

Professional Administrative Claims

| Claimant | Allowed Unpaid Administrative Claim |
|---|---|
| Manatt, Phelps & Phillips, LLP | $28,116.14 |
| FocalPoint Securities, LLC | $286,170.20 |
| Grant Thornton LLP*** | $30,102.50 |
| FTI Consulting, Inc. | $88,749.74 |
| Wickersham & Murphy*** | $3,677.14 |
| Cooley Godward LLP*** | $432,367.80 (plus fees and expenses incurred for the period from October 1 – November 9, 2009 which are estimated to be approximately $15,000) |
| Levene, Neale, Bender, Rankin & Brill L.L.P.*** | $1,073,198.39 (plus fees and expenses incurred for the period from October 16 – November 9, 2009 which are estimated to be approximately $40,000) |
| **Total** | **$1,997,381.25 (approx.)** |

**SHOE PAVILION**
**EXHIBIT 1**
(Allowed Administrative Claims) – Part 2 of 3

Landlord Administrative Claims

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 3 | Harsch Investment Properties, LLC | $11,585.24 |
| 20 | UBS Realty Investors, LLC | $300.00 |
| 21 | Regency Centers, L.P. | $37,892.92 |
| 28 | The Terra Nova Group | $17,880.82 |
| 32 | Willows Center Concord, LLC | $4,693.48 |
| 39 | Prime Outlets at Pismo Beach, LLC | $8,428.70 |
| 44 | Jantzen Dynamic Corporation | $11,515.04 |
| 48 | CT Retail Properties Finance V LLC | $5,153.78 |
| 50 | Gong Properties, LLC | $12,471.02 |

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 55 | Goldstein, Alan and Adell | $15,862.36 |
| 61 | The Boas Family Limited Partnership | $38,768.51 |
| 63 | Reseda Shopping Center II, LLC | $7,725.44 |
| 64 | GLOCO, LLC | $21,852.03 |
| 67 | BIT Holdings Sixty-Three, Inc. | $8,277.85 |
| 68 | KIR Tukwila LP | $6,994.60 |
| 70 | James Campbell Company, LLC | $7,357.11 |
| 75 | Centro Properties Group | $15,560.31 |
| 76 | HOMA II, LLC | $12,845.29 |
| 81 | Centro Properties Group | $8,926.21 |
| 82 | Potrero Center, L.P. | $27,908.50 |
| 90 | Ladera Center | $9,971.84 |
| 95 | KIR Temecula LP | $5,752.60 |

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 98 | Centro Properties Group | $14,097.52 |
| 101 | Burbank Empire Center | $31,369.34 |
| 104 | RREEF Property Management Company | $37,353.22 |
| 105 | MCD-RC CA-El Cerrito, LLC | $18,378.01 |
| 111 | Hollywood @ Western L.P. | $21,439.37 |
| 112 | Edward Litke Revocable Trust of 1995 | $73,857.34 |
| 113 | Centro Properties Group | $12,026.58 |
| 114 | Westfield Topanga Owner LP | $4,453.00 |
| 115 | U.K.-American Properties, Inc. | $7,311.83 |
| 120 | PK III San Dimas Marketplace LP | $7,717.72 |
| 122 | Ho, Chu Kwong and Hing Kay, as Trustees of the Ho Family Living Trust Dated 11/3/1989 | $18,423.58 |
| 124 | 7537 West Thomas Road, LLC | $50,549.82 |

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 126 | Toys "R" Us - Delaware, Inc. | $15,529.54 |
| 130 | NSHE LISCO LLC | $19,117.00 |
| 133 | RREEF Property Management Company | $23,531.58 |
| 134 | HIP Stephanie, LLC | $13,563.00 |
| 138 | Stone Brothers and Associates | $15,560.31 |
| 140 | Sac Central, L.L.C. | $31,616.49 |
| 141 | RREEF Property Management Company | $23,643.55 |
| 142 | Bella Terra Associates, LLC | $34,706.51 |
| 145 | Montebello, LLC | $10,723.31 |
| 147 | B&B Santa Fe Mall LLC | $6,702.40 |
| 149 | San Marcos Factory Stores, Ltd. | $13,003.59 |
| 150 | Von Karman Plaza, LLC | $20,400.52 |
| 151 | Rocklin Retail, LLC | $82,500.00 |

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 152 | OfficeMax North America, Inc. | $31,417.59 |
| 153 | RREEF Property Management Company | $25,239.81 |
| 155 | Weingarten Nostat, Inc. | $13,094.49 |
| 157 | Grand Plaza, LLC | $40,557.35 |
| 159 | Arlington Highlands, LTD | $0.00 |
| 160 | George Sorich Company, The | $14,777.60 |
| 162 | Catellus Austin Retail II, LLC | $20,677.87 |
| 164 | Vestar TM OPCO, LLC | $28,431.39 |
| 166 | Great Hills Retail, Inc. | $35,147.46 |
| 167 | Mesilla Valley Mall LLC | $16,288.44 |
| 168 | Inland Western Seattle Northgate North, L.L.C. | $18,763.54 |
| 169 | Highland Village Development, Ltd. | $20,834.39 |
| 170 | The Macerich Company | $27,182.17 |

| Store No. | Claimant | Allowed Unpaid Administrative Claim |
|---|---|---|
| 171 | Weingarten Nostat, Inc. | $15,940.00 |
| 173 | Steadfast Yuba City I, LLC | $4,825.15 |
| 174 | Prism-IQ Partners, LLC | $47,103.48 |
| 175 | WP Casa Grande Retail LLC | $31,208.16 |
| 176 | CNLRS Rockwall, L.P. | $9,787.78 |
| 178 | Vineyard Village MSV, LLC | $7,545.63 |
| 179 | Vestar Arizona XXXIX, LLC | $16,368.63 |
| 180 | WRI El Camino, LP | $1,874.61 |
| | Total | $1,332,364.32. |

## SHOE PAVILION
### EXHIBIT 1
(Allowed Administrative Claims) – Part 3 of 3

Non-Landlord and Non-Professional Administrative Claims

| Claimant | Allowed Unpaid Administrative Claim |
|---|---|
| Ad Art, Inc. | $5,500 |
| Bordan Shoe Company, Inc. | $17,030.40 (unpaid balance) |
| Cels Enterprises, Inc. | $7,500 |
| Integrys Energy Services | $4,739.85 |
| Jump USA, Inc. | $60,000 |
| TALX Corporation | $3,654 |
| Winthrop Resources Corporation | $63,918.74 |
| Hickory Brands, Inc. | $30,000 |
| Iron Mountain Information Management, Inc. | $27,684.01 |
| Other Administrative Claims as Reflected on the Attached | $230,911.69 |
| **Total** | **$450,938.69** |

| Name | Total Owed |
|---|---|
| ACTION National Sign & Lighting | 1,560.67 |
| ALLIED WASTE SERVICES | 953.62 |
| ALLIED WASTE SERVICES #902 | 7.35 |
| ALLIED WASTE SERVICES #906 | 3,639.23 |
| American Water & Energy Savers | 88.97 |
| AMERICAN WHOLESALE LIGHTING INC. | 327.27 |
| APS | 5,555.48 |
| ARKADIN, INC. | 59.80 |
| Arrowhead Waters | 55.82 |
| ASL SPECIAL SYSTEMS | 75.00 |
| AT &T LONG DISTANCE | 1,301.51 |
| AT&T | 52.52 |
| AT&T | 522.74 |
| AT&T | 3,992.75 |
| AT&TINTERNET SERVICES | 39.00 |
| AT&TMobility | 2,496.58 |
| AUBURN PLACER DISPOSAL SERVICE | 430.13 |
| BAYMARK BUSINESS PARTNERS, INC | 138.00 |
| BOB'SLOCK & SAFE CENTER | 80.00 |
| BURBANK WATER AND POWER | 2,253.92 |
| C R &R  INCORPORATED | 563.85 |
| CALIFORNIA SUPPLY NORTH, INC. | 86.40 |
| CALIFORNIA SUPPLY, INC. | 777.32 |
| CALIFORNIA WATER SERVICE COMPANY | 0.17 |
| CALIFORNIA-AMERICAN WATER | 51.45 |
| CITYOF BAKERSFIELD | 8.80 |
| Cityof Compton Municipal Water Dpt | 123.86 |
| CITYOF FLAGSTAFF (UTILITIES) | 39.08 |
| CITYOF GLENDALE | 717.78 |
| CITYOF HURST | 39.52 |
| CITYOF MOUNTAIN VIEW | 730.76 |
| CITYOF OXNARD | 213.07 |
| CITYOF PEORIA UTILITY SERVICES | 86.65 |
| CITYOF PETALUMA | 845.52 |
| CITYOF PHOENIX | 52.56 |
| CITYOF SANTA FE UTILITY BILLING | 3.63 |
| CITYOF SANTA MONICA | 517.69 |
| CITYOF SEATTLE | 3,027.77 |
| CITYOF SEATTLE BUSINESS LIC. TAX | 217.93 |
| CITYOF TRACY | 601.82 |
| CITYOF TUCSON | 595.55 |
| CITYOF VALLEJO | 201.08 |
| Cityof Yuma | 440.23 |
| COMDATA STORED VALUE SOLUTIONS,INC. | 783.77 |
| CONTROL BUILDING SERVICES, INC. | 650.00 |
| CROWNDISPOSAL CO., INC. | 81.53 |
| CWD | 102.09 |
| DE VORE LIGHTING, INC | 675.41 |
| DEPARTMENT OF LABOR AND INDUSTRIES | 3,350.28 |
| DUBLIN SAN RAMON SERVICES DISTRICT | 127.32 |
| EDCODISPOSAL CORP. | 4.30 |

| | |
|---|---|
| EDCOWASTE & RECYCLING SERVICE, INC | 192.31 |
| EL TORO WATER DISTRICT | 107.26 |
| Electrical District #2 Pinal County | 2,050.82 |
| FEDERAL EXPRESS | 48,171.62 |
| FRANCOTYP-POSTALIA, INC. | 311.76 |
| GENERAL INFORMATION SERVICES, INC. | 321.55 |
| GOLDEN GATE DISPOSAL | 663.91 |
| GOLDEN STATE WATER COMPANY | 113.74 |
| GORDON B. FORD | 942.90 |
| GRANITE TELECOMMUNICATIONS | 8,647.18 |
| GREENWASTE RECOVERY | 151.64 |
| IRVINE RANCH WATER DISTRICT | 27.42 |
| JANESH RUWAMPATHIRANA | 12.00 |
| L.A.DEPARTMENT OF WATER AND POWER | 23,917.86 |
| LABORREADY, INC. | 6,413.88 |
| LOCKPATROL CORP | 244.16 |
| LOS ANGELES COUNTY TREASURY | 99.37 |
| METROMECHANICAL, INC. | 3,917.09 |
| MODESTO IRRIGATION DISTRICT | 2,047.06 |
| PACIFIC GAS & ELECTRIC | 25,803.18 |
| PANACEA NETWORKING | 1,080.00 |
| PASADENA WATER and POWER | 516.87 |
| PITNEY BOWES - C/O RESERVE ACCOUNT | 17.30 |
| PNM | 3,540.20 |
| PUGETSOUND ENERGY | 1,505.60 |
| QUEST - WA | 307.49 |
| QWIKWAY TRUCKING COMPANY | 3,715.00 |
| RESSAC | 1,927.19 |
| RICHMOND SANITARY SERVICE | 1,138.72 |
| ROSIELOPEZ CO SHOE PAVILION | 15.00 |
| SAN FRANCISCO PUBLIC UTILITIES COM | 180.72 |
| SANTAROSA RECYCLING & COLLECTION | 886.39 |
| SIERRA PACIFIC POWER CO. | 514.28 |
| SIMPLEXGRINNELL LP | 104.00 |
| SOUTHWEST GAS CORPORATION | 171.97 |
| STATEBOARD OF EQUALIZATION | 3,803.00 |
| SUNSET SCAVENGER COMPANY | 159.55 |
| SUPERIOR SANITATION SERVICE, INC. | 267.10 |
| TAX COLLECTOR CITY & COUNTY OF SAN | 5,073.91 |
| TERMINIX PROCESSING CNTR-CINCINNATI | 1,826.00 |
| THE CITY OF SAN DIEGO | 60.47 |
| THE GAS COMPANY | 10.33 |
| TUCSON ELECTRIC POWER COMPANY | 5,005.87 |
| TULALIP DATA SERVICES | 45.00 |
| U.S.WASTE INDUSTRIES, LLC | 1,704.37 |
| US TELEPACIFIC CORPORATION | 32,128.89 |
| VALLEJO GARBAGE SERVICE | 57.68 |
| VENALI, INC. | 770.64 |
| VERIZON CALIFORNIA | 17.23 |
| VERIZON NORTHWEST | 67.24 |
| VERIZON SOUTHWEST | 360.13 |
| VERIZON WIRELESS | 311.25 |

| | |
|---|---:|
| WASHINGTON FIRE & SAFETY, INC. | 93.66 |
| WASTEMANAGEMENT OF ORANGE COUNTY | 24.38 |
| | 230,911.69 |

| | |
|---|---|
| In re:<br><br>Shoe Pavilion, Inc.<br>Shoe Pavilion Corporation<br><div align="right">Debtor(s).</div> | Chapter 11<br><br>1:08-bk-14939-MT<br>1:08-bk-14941-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

The foregoing document described **NOTICE OF MOTION AND MOTION OF DEBTORS TO APPROVE DISMISSAL OF DEBTORS' CHAPTER 11 BANKRUPTCY CASES AND DISTRIBUTION OF FUNDS TO ALL OUTSTANDING ADMINISTRATIVE CLAIMANTS EITHER IN FULL OR ON A PRO RATA BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF LAURA CONTRERAS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 19, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

  * Samuel R Arden    sarden@hssw.com
  * Ron Bender    rb@lnbrb.com
  * Sandor T Boxer    tedb@tedboxer.com
  * Dustin P Branch    dustin.branch@kattenlaw.com
  * William S Brody    smartin@buchalter.com
  * William S Brody    tpearsall@buchalter.com
  * David I Brownstein    brownsteinlaw@gmail.com
  * Katherine Bunker    kate.bunker@usdoj.gov
  * Aaron De Leest    aed@dgdk.com
  * Shiva S Delrahim    sdelrahim@whitecase.com
  * Jamie P Dreher    jdreher@downeybrand.com
  * Glen Dresser    gombd@aol.com
  * Robert L Eisenbach    reisenbach@cooley.com
  * Louis J Esbin    Esbinlaw@sbcglobal.net
  * Richard W Esterkin    resterkin@morganlewis.com
  * Charles J Filardi    abothwell@filardi-law.com
  * Anthony A Friedman    aaf@lnbrb.com
  * Jerome Bennett Friedman    jfriedman@jbflawfirm.com
  * Diane P Furr    dfurr@poynerspruill.com
  * Justin E Garratt    jgarratt@lindahlbeck.com
  * Robert S Gebhard    robert.gebhard@sdma.com
  * Thomas M Geher    tmg@jmbm.com
  * Barry S Glaser    bglaser@swjlaw.com
  * Matthew A Gold    courts@argopartners.net
  * Andrew A Goodman    agoodman@andyglaw.com
  * Richard W Havel    rhavel@sidley.com
  * Brian D Huben    brian.huben@kattenlaw.com,
carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com

1    * Jay W Hurst    jay.hurst@oag.state.tx.us
    * Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
2    * Scott L Keehn    scottk@keehnlaw.com,
    scottk@keehnlaw.com;cynthial@keehnlaw.com;lesliek@keehnlaw.com;lisak@keehnlaw.com;corrinen@ke
3    ehnlaw.com
    * Monica Y Kim    myk@lnbrb.com
4    * Greggs S Kleiner    gkleiner@cooley.com
    * Ian Landsberg    ilandsberg@lm-lawyers.com
5    * Jordan A Lavinsky    jlavinsky@hansonbridgett.com,
    kfoster@hansonbridgett.com;nnewman@hansonbridgett.com
6    * Gabriel Liao    gliao@perkinscoie.com
    * Christopher Minier    becky@ringstadlaw.com
7    * Marlene M Moffitt    mmoffitt@allenmatkins.com
    * Byron Z Moldo    bmoldo@ecjlaw.com, tmelendez@ecjlaw.com
8    * Kevin P Montee    kmontee@hornersinger.com
    * Zachary Mosner    bcumosner@atg.wa.gov
9    * Steven A Munson    smunson@herrick.com
    * Kevin M Newman    knewman@menterlaw.com
10   * Nancy Newman    nnewman@hansonbridgett.com
    * William Novotny    william.novotny@mwmf.com
11   * Rachel K Nunes    lkolacek@abbeylaw.com
    * Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
12   * Randy P Orlik    rorlik@coxcastle.com
    * Kathy Bazoian Phelps    kphelps@dgdk.com
13   * Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
    * Kurt Ramlo    kurt.ramlo@skadden.com
14   * Michael Reed    othercourts@mvbalaw.com
    * Holly Roark    holly@roarklawoffices.com
15   * Mark Romeo    romeolaw@msn.com
    * Nanette D Sanders    becky@ringstadlaw.com
16   * Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
    * Adam M Starr    starra@gtlaw.com
17   * Edward J Tredinnick    etredinnick@greeneradovsky.com
    * Ronald M Tucker    rtucker@simon.com,
18   psummers@simon.com;rwoodruff@simon.com;sHclark@simon.com
    * United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
19   * Susan L Vaage    svaage@grahamvaagelaw.com
    * Andrew F Whatnall    awhatnall@daca4.com
20                     ☐   Service information continued on attached page

21

  **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
22   On **October 19, 2009**, I served the following person(s) and/or entity(ies) at the last known address(es) in
  this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed
23   envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service
  addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>*
24   *completed no later than 24 hours after the document is filed.*

25   **VIA U.S. MAIL – SEE ATTACHED SERVICE LIST**

26                     ☒   Service information continued on attached page

27

28   ( PROOF OF SERVICE CONTINUED ON FOLLOWING PAGE )

1

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for
2   each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 19, 2009**, I
served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing
3   to such service method), by facsimile transmission and/or email as follows. *Listing the judge here
constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after
4   the document is filed.*

5   **COURTESY COPY VIA ATTORNEY MESSENGER**
**Hon. Maureen Tighe**
6   **U.S. Bankruptcy Court**
**10241 Burbank Boulevard, Ctrm 302**
7   **Woodland Hills, CA  91367**          ☐      Service information continued on attached page

8   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true
and correct.

9

| October 19, 2009 | Angela Antonio | */s/ Angela Antonio* |
|---|---|---|
10 | *Date* | *Type Name* | *Signature* |

11   This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shoe Pavilion
File 4226
RSN

**SERVED VIA U.S. MAIL**

Debtors
Shoe Pavilion
Attn: Laura Contreras
15303 Ventura Blvd., Ste. 1510
Sherman Oaks, CA 91403

RSN-Counsel for Simon Property
Ronald M. Tucker, Esq.
225 West Washington Street
Indianapolis, Indiana 46204

Counsel for Wells Fargo Retail Finanee, LLC
Steven D. Levine, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111

Frank O'Connor, Esq.
Wells Fargo Retail Finance, LLC
One Boston Place, 18th Floor
Boston, MA 02108

Counsel for Macerich, RREEF Ppty Mgmt, Westfield
Thomas J. Leanse / Brian D. Huben
Dustin P. Branch
Katten Muchin Rosenman LLP
2029 Century Park East, Ste. 2600
Los Angeles, CA 90067-3012

Counsel for Vestar TM-OPCO, LLC and Vestar QCM LLC
William Novotny
MARISCAL, WEEKS, McINTYRE & FRIEDLANDER, PA
2901 North Central Avenue, Ste. 200
Phoenix, AZ 85012-2705

Counsel for Catellus Austin Retail
Edward J. Tredinnick
Greene Radovsky Maloney Share & Hennigh LLP
Four Embarcadero Center, Suite 4000
San Francisco, CA 94111-4106

Sarah D. Moyed
Securities and Exchange Commission
Los Angeles Regional Office
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA 90036

Attorneys for Jump USA, Inc.
Alan J. Brody, Esq.
Adam M. Starr, Esq.
Greenberg Traurig, LLP
200 Park Avenue
PO Box 677
Florham Park, NJ 07932
Dmitri Beinus
DB Shoe Company
5455 Hollywood Blvd.
Los Angeles, CA 90027

Kate Bunker, Esq.
United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Arlington ISD/City of Hurst, et al.
c/o Elizabeth Banda
Perdue, Brandon, Fielder, Collins & Mott
P.O. Box 13430
Arlington, TX 76094-0430

Counsel for Wells Fargo Retail Finance, LLC
William S. Brody, Esq.
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017

General Growth Management, Inc.,
Landlord and Managing Agent
c/o Kristen N. Pate
110 N. Wacker
Chicago, IL 60606

Counsel for Bella Terra Associates, LLC
J. Bennett Friedman, Esq.
HAMBURG KARIC EDWARDS &MARTIN LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067

Counsel for Riverside Properties, Ltd
Susan Vaage, Esq.
Graham Vaage & Cisneros
500 N. Brand Blvd., Ste. 1030
Glendale, CA 91203

Counsel for Bordan Shoe Company, Ine.
Steven M. Spector; Thomas M. Geher
Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, CA 90067

Committee Counsel
Jay R. Indyke, Esq.
Miehael A. Klein, Esq.
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036

Committee counsel
Robert L. Eisenbach III, Esq.
Gregg S. Kleiner, Esq.
Cooley Godward Kronish LLP
101 California Street, 5th Floor
San Franciseo, California 94111-5800

John Murphy, Esq.
Wickersham & Murphy
430 Cambridge Avenue, Suite 100
Palo Alto, California 94306-1507

Texas Comptroller of Public Accts
Jay W. Hurst, Assistant Atty General
Bankruptcy and Collections Division
P.O. Box 12548
Austin, TX 78711-2548

Counsel for Kassebaum & Zaat Investments, LL (
Jamie P. Dreher, Esq. R. Dale Ginter, Esq
Downey Brand LLP
555 Capitol Mall, 10th Floor
Sacramento, CA 95814

Counsel for Inland Western Seattle Northgat
North, et al.
Kevin M. Newman, Esq.
Menter, Rudin & Trivelpiece PC
308 Maltbie Street, Ste 200
Syracuse, NY 13204-1498

Counsel for ZRP BurbankFAF Inv.
Ernie Zachary Park, Esq.
BEWLEY, LASSLEBEN & MILLER
13215 E. Penn St., Ste. 510
Whittier, CA 90602-1797

Counsel for Admarketing, Inc.
Richard Havel/Matt Dickerson
Sidley Austin LLP
555 West Fifth Street, Suite 400
Los Angeles, CA 90013-1010

Mr. Joseph Farivar
Bordan Shoe Company, Ine.
4335 East Valley Boulevard
Los Angeles, CA 90032

Counsel for West LA City Portfolio, LLC
Byron Z. Moldo/Anthony A. Friedman
Moldo Davidson Frajoli Seror & Sestanovich
2029 Century Park East, 21st Floor
Los Angeles, CA 90067

~~David W. Meadows, Esq.~~
~~Law Offices of David W. Meadows~~
~~1801 Century Park East, Suite 1250~~
~~Los Angeles, CA 90067~~
**Delete per e-mail of 10/10/2008**

Counsel for Rocklin Retail, LLC
Samuel R. Arden
Hartman, Simons, Spielman & Wood, LLP
6400 Powers Ferry Road, NW, Suite 400
Atlanta, GA 30339

Counsel for Wolff Shoes
Sandor T. Boxer, Esq.
Law Offices of Sandor T. Boxer
12400 Wilshire Blvd., Ste. 1300
Los Angeles, CA 90025

Counsel for 770 Tamalpais Drive, Inc. and
Jantzen Dynamic Corporation
Jeffrey B. Ellman / Brett J. Berlin
JONES DAY
1420 Peachtree St. NE, Ste. 800
Atlanta, GA 3039-3053

RSN
Travelers - National Accounts
Attn: Olga Press, Account Resolution
1 Tower Square – 5MN
Hartford, CT 06183-4044

Counsel for Glimcher Supermall Venture, LLC
Kristin E. Richner, Esq.
Squire, Sanders & Dempsey, LLP
1300 Huntington Center
41 South High Street
Columbus, OH 43215

FocalPoint Partners, LLC
James Skelton
11766 Wilshire Blvd Suite 1270
Los Angeles, CA 90025

Counsel for Rockwall County, Rockwall CAD,
Dallas County, City of Frisco, Tarrant County
Elizabeth Weller
Linebarger Goggan Blair & Sampson LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201

Counsel for Winthrop Resources Corp
Shiva S. Delrahim
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071

Counsel for Landlord: Store 122
Ronald M. Hirano,
Quan, Cohen & Hirano, LLP
212 South Palm Avenue, Ste 101
Alhambra, CA 91801

Ivan Gold, Esq.
Allen Matkins Leck Gamble & Mallory LLP
3 Embareadero Center, 12th Floor
San Francisco, CA, 94111

Atty for 1000 Oaks Mktplace/Terra Nova Plaza
Ian S. Landsberg, Esq.
Landsberg Margulies LLP
16030 Ventura Blvd. Ste. 470
Encino, CA 91436

Counsel for Matisse, Yoki, Romeo & Juliette,
SMAC
Louis J. Esbin, Esq.
Law Offices of Louis J. Esbin
27201 Tourney Rd., Ste. 122
Valencia, CA 91355-1857

Counsel for Regency Centers, Regency Realty Group,
Shops at Highland Village Development Ltd
Nancy J. Newman / Jordan A. Lavnisky
Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

RSN
Attn: Faith Goolsby
Arlington Highlands, Ltd.
c/o Lincoln Property Co.
6500 Greenville Ave., Ste. 770
Dallas, TX 75206

Proposed Special Labor Counsel
Ivan Kallick/Sandra King
Sharon Bauman
Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd.
Los Angeles, CA, 90064

Counsel for Steadfast Yuba City II, LLC
Glen Dresser
Law Offices of Glen Dresser
12650 Riverside Drive, Suite 100
North Hollywood, CA 91607

Counsel for WCC Properties
L. Scott Keehn
Keehn & Assoeiates, APC
402 West Broadway, Suite 1210
San Diego, CA 92101

Counsel for La Alameda, LLC
Robert P. Friedman, Esq.
Law Offices of Robert P. Friedman
827 Moraga Drive
Bel Air, CA 90049

RSN
Primeshares
Attn: RVS
261 Fifth Avenue, 22nd Floor
New York, NY 10016

Counsel for 770 Tamalpais Drive, Inc. and
Jantzen Dynamic Corporation
Rick L. Shackelford
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300

Financial Advisor for Committee
Matthew Pakkala
FTI Consulting
633 West 5th Street, Suite 1600
Los Angeles, CA 90071

Attorneys for Hickory Brands
Diane P. Furr, Esq.
Poyner & Spruill LLP
301 South College St., #2300
Charlotte, NC 28202

Counsel for Fox Partners, LP
Lewis R. Warren, Esq.
Abbey, Weitzenberg, Warren & Emery, P (
P.O. Box 1566
Santa Rosa, CA 95402-1566

Counsel for Northgate Farms, Landlord for
Desert Sky, Arizona
Bart Barringer
Law Offices of Mayol & Barringer
P.O. Box 3049
Modesto, CA 95353

Counsel for Jeffrey & Hilary Fischer, Landle
Philip A. Kramer
Kramer & Kaslow
23901 Calabasas Road, Suite 2013
Calahasas, CA 91302

Counsel for Landlord Shafer Plaza XXV, Ltd.
Randall J. Shafer
Shafer & Mueller, PLLC
8226 Douglas Ave., Ste. 550
Dallas, TX 75225-5943

Iron Mountain Information Management
c/o Frank F. McGinn
Bartlett Hackett Feinberg
155 Federal Street, 9th Floor
Boston, MA 02110

Counsel for KIR Temecula et al
Annie C. Wells, Esq.
Morgan Lewis & Bockius
101 Park Avenue
New York, NY 10178-0600

Counsel for County of Hays
Michael Reed, Esq.
McCreary, Veselka, Bragg & Allen
PO Box 1269
Round Rock, TX 78680

Co-Counsel for Great Hills Retail
Nanette D Sanders Esq
Ringstad & Sanders
2030 Main Street, Ste 1200
Irvine, CA 92614

Counsel for Prism, 121 Retail Ventures
Kathy Bazoian Phelps
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067

Jeffrey N. Pomerantz, Esq.
Pachulski, Stang, et al.
10100 Santa Monica Blvd., Ste. 1100
Los Angeles, CA 90067

Co-Counsel for Scents of Worth
Randy P. Orlik Esq
Cox, Castle, Nicholson
2049 Century Park East, 28th Floor
Los Angeles, CA 90067

Washoe County Treasurer
Attn: Dieon
PO 30039
Reno, NV 89520

Counsel for BIT Investment Eleven
Clifford R. Horner / Kevin Montee, Esq.
Horner & Singer LLP
1646 N. California Blvd., Ste 250
Walnut Creek, CA 94596

Counsel for Shafer Plaza 06 A, LLC
B. Scott Pierce
Brackett & Ellis, P.C.
100 Main Street
Fort Worth, TX 76102-3090

Counsel for City of El Paso
David Aelvoet
Linebarger Goggan Blair & Sampson LLP
711 Navarro, Ste 300
San Antonio, TX 78205

Counsel for San Marcos CISD, City of San Marcos
Diane Sanders
Linebarger Goggan Blair & Sampson LLP
PO Box 17428
Austin, TX 78760-7428

Co-counsel for Great Hills Retail
Brooks Hamilton Esq
Haynes & Boone
901 Main Street
1221 McKinney St., Ste. 2100
Houston, TX 77010

County of Kern, State of California
c/o Treasurer/Tax Collector's Office
Attn: Bankruptcy Division
P.O. Box 579
Bakersfield, CA 93302-0579

Pima County Treasurer
Patty Davidson, Chief Deputy Treasurer
115 N. Church Avenue
Tucson, AZ 85701

Co-Counsel for Scents of Worth
Steven A. Munson Esq
Herrick Feinstein
Two Park Avenue
New York, NY 10016

Counsel for Edward Litke, Trustee
Mark Romeo, Esq.
235 Montgomery St., Ste. 410
San Francisco, CA 94104

Zachary Mosner, Esq.
Assistant Attorney General
Bankruptcy/Collections Unit
STATE OF WASHINGTON
800 Fifth Ave., Ste 2000
Seattle, WA 98104-3188

Counsel for KIR Temecula et al
Richard Esterkin Esq
Morgan Lewis & Bockius
300 South Grand Ave, 22nd Floor
Los Angeles, CA 90071-3132

Counsel for Passport, Cube, NYCA,
Knitwork
John V Tamborelli, Esq
Stone, Rosenblatt, Cha
21550 Oxnard St., Ste 200, Main Plaza
Woodland Hills, CA 91367

Counsel for Jeffrey & Hilary Fischer
Philip A. Kramer
Kramer & Kaslow
23901 Calabasas Rd., Ste 2013
Calabasas, CA 91302

Counsel for MCD-RC_CA_El Cerrito LLC
Nancy Newman/Jordan Lavinsky
HANSON BRIDGETT LP
425 Market Street, 26th Floor
San Francisco, CA 94105

Counsel for CREA/PPC LongBeach
Paul E. Van Hoomissen, Esq.
Jackson, DeMarco, et al.
2030 Main St., Ste 1200
Irvine, CA 92614

Counsel for Stevenson Ranch Plaza II, LLC
Dennis P. McNulty, Esq.
Wojkowski & McNulty, LLP
2151 E. Gonzales Road, Suite 250
Oxnard, CA 93036

Counsel for Arlington Highlands
Andrew Goodman, Esq.
21650 Oxnard St., Ste 500
Woodland Hills, CA 91367